UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BRANDON GIBBAS, | : | Case No. 3:19-cv-400 |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

## I.   INTRODUCTION

Plaintiff Brandon Gibbas, a veteran of the United States Army, applied for Disability Insurance Benefits and for a period of benefits in May 2018. His claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 7), the Commissioner's Memorandum in Opposition (Doc. No. 10), and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since January 2, 2018. Plaintiff was twenty-eight years old on the alleged disability onset date. Accordingly, he was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). He has at least a high school education.

The evidence of record related is sufficiently summarized in the ALJ's decision, (Doc. No. 6-2, PageID 126-35), Plaintiff's Statement of Errors (Doc. No. 7), and the Commissioner's Memorandum in Opposition (Doc. No. 10). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e.,

"substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence,

'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 2, 2018, the alleged disability onset date.

Step 2: Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbosacral spine, degenerative joint disease of the left shoulder and left hip, obesity, post-traumatic stress disorder (PTSD), and depression.

Step 3: Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … subject to following limitations : (1) occasional crouching, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no crawling or climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional use of the left upper extremity for pushing, pulling or overhead reaching; (5) no

>>concentrated exposure to temperature extremes, respiratory, irritants, or excess humidity; (6) no concentrated exposure to vibrations or loud noise; (7) the claimant is limited to performing jobs in which he would be permitted to use a cane for assistance when ambulating; (8) the claimant is limited to performing unskilled, simple, repetitive tasks; (9) occasional superficial contact with co-workers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); (10) no public contact; (11) no fast paced production work or jobs which involve strict production quotas; and (12) the claimant is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

Step 4: Plaintiff is unable to perform his past relevant work.

Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 6-2, PageID 128-35). These main findings led the ALJ to ultimately conclude that Plaintiff has not been under a benefits-qualifying disability. *Id.* at 135.

## V. DISCUSSION

Plaintiff sets forth two errors in the present action. He initially challenges the residual functional capacity assessment and the consideration of the vocational expert's testimony. He also contends that error occurred in evaluating the VA's disability rating.

His first asserted error centers on his degenerative joint disease of the left shoulder and left hip. Plaintiff specifically argues that his residual functional capacity does not "account for how these conditions would affect [his] ability to stay on task in the

workplace, or be present at work, when he is experiencing radiating pain…" (Doc. No. 7, PageID 1582-83). He argues that time off-task and absence limitations were necessary to accommodate his severe shoulder and hip impairments, and that the failure to include these limitations was in error. *Id.* at 1583. He further contends that the vocational expert's related testimony was not fully considered, which also was in error. *Id.*

The residual functional capacity assessment is an evaluation of the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is well-established that the ALJ assesses and determines a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record"); 20 C.F.R. § 404.1546(c) ("the administrative law judge…is responsible for assessing your residual functional capacity"); 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding residual functional capacity is reserved to the Commissioner); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'").

Plaintiff's contentions as to the residual functional capacity assessment fall short. A careful review of the record reflects that the residual functional capacity assessment is supported by substantial evidence. Plaintiff's residual functional capacity accommodates his severe shoulder and hip impairments in several ways. By virtue of being limited to sedentary work, the ALJ indicated that Plaintiff can perform work that involves sitting,

occasional walking and standing, "lifting no more than 10 pounds at a time," and "occasionally lifting or carrying articles like docket files, ledgers, and small tools." *See* 20 C.F.R. § 1567(a). Likewise, he further limited Plaintiff to "occasional use of the left upper extremity for pushing, pulling or overhead reaching," and "occasional crouching, kneeling, stooping, balancing, and climbing of ramps and stairs." (Doc. No 6-2, PageID 130). Plaintiff was restricted to jobs where he could use a cane for assistance. *Id.*

There is an absence of objective medical evidence that supports the need for time-off task and absence limitations. Plaintiff points to the fact that he had minimal improvement since starting physical therapy, and that he continued to have paresthesia and pain in his left arm that radiated down to his hand. (Doc. No. 7, PageID 1582). He also cites to his own testimony at the hearing that reflects he has pain and numbness in his arm with movement and that he experiences symptoms daily. *Id.* at 1583. While it is certainly possible that Plaintiff's pain would interfere in some ways, the evidence he cites does not speak to the extent that his pain would interfere with his ability to stay on task, or be present at work, or if it would be work preclusive. Furthermore, much of this evidence derives from Plaintiff's subjective complaints, rather than objective medical evidence—which is relevant because the ALJ found that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record…" (Doc. No. 6-2, PageID 132).

Plaintiff does not cite to any medical opinion evidence that supports the need for greater limitations either. State agency reviewing physicians, Drs. Freihofner and Teague, rendered opinions as to Plaintiff's physical impairments. Dr. Freihofner limited Plaintiff to light work, whereas Dr. Teague restricted him to sedentary work. (Doc. No. 6-3, PageID 185, 204). In reviewing these opinions, the ALJ found the opinions were "only partially persuasive insofar as their postural limitations." (Doc. No. 6-2, PageID 133). Accordingly, he explained that due to Plaintiff's use of a cane and the fact that hip replacement surgery was recommended, he found it appropriate to reduce him to sedentary work.

Plaintiff heavily focuses on the vocational expert's testimony at the hearing related to the proposed limitations. The vocational expert testified that there would be no competitive work available to an individual like Plaintiff if that individual were absent two times per month. (Doc. No. 6-2, PageID 169). Likewise, in response to questioning from Plaintiff's counsel, the vocational expert offered that there would be no competitive work if an individual were off task more than ten percent of the workday, outside scheduled breaks. *Id.* at 170. However, an "ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations." *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019). This seems to be the case here because, as discussed above, medical evidence supporting limitations for time off-task and absences is lacking.

8

Plaintiff also contends that error occurred in considering the VA's disability rating and related evidence. He argues that the ALJ "breached his duty to discuss the significantly probative evidence offered by the VA portraying the severity of [his] conditions" and that "he was required to give the VA's determination, and the evidence underlying it, more than a superficial treatment and a mechanical dismissal." (Doc. No. 7, PageID 1585-86).

For claims filed on or after March 27, 2017, the Social Security Administration ("SSA") "will not provide any analysis in [their] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [an individual is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. Furthermore, "[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [an individual is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [the SSA's] decision about whether [the individual is] disabled or blind under [the SSA's] rules." *Id.* Nevertheless, the SSA "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [they] receive as evidence in [the individual's] claim in accordance with § 404.1513(a)(1) through (4)." *Id.*

Plaintiff seems to overlook this regulation that applies to his claim, and instead relies on several cases from outside the Sixth Circuit. But these cases, *i.e.*, *Boca v. Dep't of Health & Human Servs.*, 5 F.3d 1257, 1262-63 (10th Cir. 1993), are not instructive because they do not contemplate his claim in light of the applicable regulation. Because his claim

9

was filed after March 27, 2017, the ALJ was not required to provide any analysis of the VA's disability rating. Nevertheless, the ALJ briefly discussed the disability rating:

> The record indicates that [Plaintiff] was denied entry into a return to work program offered by the U.S. Department of Veteran's Affairs because it would not be feasible for him to benefit from a program designed to return him to work (Exhibit 2F at 1). Further, he was given a 90 percent service connected disability rating (Exhibit 14F at 23). The undersigned does not find this evidence persuasive because the issue of disability is one reserved for the Commissioner of Social Security. Further, evidence that [he] is unable to return to his prior job in the military does not consider any work that [he] could do outside of his past employment.

(Doc. No. 6-2, PageID 133). Further, throughout his decision, the ALJ considered the supporting evidence underlying this rating such as Plaintiff's treatment records from the Dayton VA Medical Center. (Doc. No. 6-2, PageID 131-33). Plaintiff does not cite to any supporting evidence that was not considered in assessing his claim. For these reasons, the undersigned declines to find that error occurred in assessing the VA's disability rating.

Accordingly, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.

September 29, 2021

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

10